[L. A. No. 2953. In Bank.—July 24, 1913.]

R. GARSTANG, Respondent, v. NEWTON J. SKINNER, Defendant and Appellant; LOS ANGELES STOVE COMPANY et al., Defendants and Respondents.

PLEADING—CONSTRUCTION OF COMPLAINT ON APPEAL—SUPPORT OF JUDGMENT FOR PLAINTIFF.—In the absence of a demurrer to the complaint, its averments must be construed on appeal with great liberality, so far as may be necessary in support of the judgment for the plaintiff.

ID.—ACTION FOR DAMAGES ALONE—SHOWING OF DAMAGES ESSENTIAL. In an action to recover damages alone, a judgment for the plaintiff is not supported either by the complaint or by the findings, if the complaint contains no express allegation of damages, nor any

statement of facts showing substantial damages, and the findings
are in the language of the complaint on the subject.

ID.—MEASURE OF DAMAGES FOR FRAUDULENT EXCHANGE—DIFFERENCE IN
VALUES AT TIME OF EXCHANGE.—In the absence of any claim of
special damages, the measure of damages for fraudulently inducing
the plaintiff to exchange certain mortgages for bonds, is the excess
of the value of the mortgages over the value of the bonds, such
values being taken as of the time of the exchange. This rule ap-
plies, at least, in all cases where there are no supervening circum-
stances which render the values at some other time material to the
injury arising from the fraud.

ID.—VALUES AT TIME OF COMMENCEMENT OF ACTION—INSUFFICIENT
FINDING.—A finding that at the time of the commencement of the
action to recover damages for inducing such fraudulent exchange,
which was more than two years after the exchange was made, the
bonds received by the plaintiff, and the property securing the same,
were of no value, is insufficient to establish the fact that the bonds
were not worth more than the mortgages when they were exchanged.

ID.—EXCHANGE OF MORTGAGES CONSTITUTING FIRST LIENS FOR BONDS—
INFERENCE AS TO VALUE—JUDGMENT FOR MORTGAGE INDEBTEDNESS
UNAUTHORIZED.—The mere fact that the mortgages given by the
plaintiff in exchange for the bonds had constituted a first lien on
the property securing the bonds, and that the bonds received by
him were not an exclusive first lien thereon, although it might war-
rant the inference that the bonds received were of less value than
the mortgages, is insufficient to show the difference in their respec-
tive values, or to indicate that it was substantial. While such fact
might authorize the recovery by the plaintiff of nominal damages,
it would not support a judgment for the whole amount of the mort-
gage indebtedness.

ID.—RESCISSION—OFFER MUST BE PROMPT UPON DISCOVERY OF FACTS.—
A person having a right to rescind must make the offer promptly,
upon discovering the facts which entitle him to rescind, if he is
free from duress, menace, undue influence, or disability, and is
aware of his right to rescind.

ID.—IGNORANCE OF FACTS JUSTIFYING RESCISSION—LACHES—NOTICE OF
FACTS PUTTING ON INQUIRY—CHANGE IN CONDITIONS.—The plain-
tiff's ignorance of the falsity of the representations inducing him
to make the exchange, would, as a general rule, negative any laches
on his part in offering to rescind. This rule is subject to the prin-
ciple that notice of facts and circumstances which would put a man
of ordinary prudence and intelligence on inquiry is, in the eye of
the law, equivalent to knowledge of all the facts a reasonably dili-
gent inquiry would disclose. The promptness necessary to escape
the estoppel of laches will depend on the circumstances of the case.
In general, the right is lost if, during the delay, conditions have

changed so that a rescission will cause to the other party material loss which he would not have suffered if it had been demanded sooner.

ID.—RIGHT OF RESCISSION LOST BY DELAY.—In accordance with the foregoing rules, it is held, upon a review of the evidence, that the plaintiff had lost his right of rescission of the contract of exchange by his delay in ascertaining his condition after having been put on inquiry respecting the nature of the bonds received by him, and the extent to which they were a first lien on the property, and by his delay in asserting his rights thereafter.

[APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. George H. Hutton, Judge.

The facts are stated in the opinion of the court.

R. P. Henshall, Newton J. Skinner, and Nat. Schmulowitz, for Appellant.

Kemp, Mitchell & Silberberg, and Frank G. Finlayson, for Plaintiff and Respondent.

Morton, Riddle & Hollzer, for Defendants and Respondents.

SHAW, J.—This action was begun against Skinner, The Los Angeles Stove Company, Scholfield, Roser, and Rawlings to recover the sum of fifteen thousand dollars, with interest. Rawlings was not served with process and did not appear. The court made findings and gave judgment in favor of the plaintiff against Skinner, alone, for $18,740 and costs, and in favor of all the other defendants, except Rawlings, against plaintiff for their costs. Skinner has appealed from said judgment against him and also from an order denying his motion for a new trial.

The appellant urges that the complaint is insufficient as a statement of a cause of action. The narrative of facts is incomplete and many of them are defectively pleaded. It was evidently intended to state a cause of action to enforce a rescission and recover the consideration given. No demurrer was filed and its averments must therefore be construed with great liberality, so far as may be necessary in support of the judgment. For this reason, we prefer not to consider the

sufficiency of the complaint, except in connection with the questions whether the findings support the judgment and whether they are supported by the evidence. Primarily therefore it is necessary to state the essential facts alleged and found.

The Los Angeles Stove Company is a corporation and Scholfield, Roser, and Rawlings were its managing officers. Skinner, so far as appears, had no stock in the corporation and was neither an officer nor an agent thereof. He was a duly licensed attorney and he appears to have acted in the transaction at first as the business adviser of the plaintiff, and thereafter as his agent and attorney. Skinner was vice-president of a bank in which plaintiff was a large depositor. At his suggestion and upon his advice, the plaintiff, in July, 1906, purchased a mortgage given by the Stove Company for five thousand dollars upon its property to one Rose McFadden. Skinner then induced plaintiff to loan the company ten thousand dollars more and to take as security a note and mortgage for seventeen thousand dollars, upon all the property of the company, to cover both debts, which mortgages were first liens on said property. At the same time plaintiff was induced by Skinner to sign a contract with the company, dated July 23, 1906, reciting that he had subscribed for fifteen thousand dollars of the company's bonds of the par value of one hundred dollars each, which were part of a bond issue of one hundred thousand dollars, and a like amount of the company's stock, as a bonus, for all of which he was to pay ninety per cent of the face value of the bonds, and agreeing that he would not resell the bonds at less than par, the company agreeing to repurchase from him in one year all of said bonds remaining in his hands at ninety-five dollars each. Skinner told him that it was necessary to sign this document and others, in order to insure the validity of the company's bonds, and that upon signing them he would still have a first lien on all the property of the company as security for the fifteen thousand dollars, that it was necessary to turn over his mortgages to a certain trust company, and that this would not waive any of his securities. The contents and purport of the other papers do not appear. He did not understand the import of the aforesaid contract, nor what was meant by insuring the validity of the bonds, but he believed the statement that he would

still retain, as his security, a first lien on all the property of the company. Thereupon he delivered to Skinner said contract and his notes and mortgages and he never saw them thereafter. On November 30, 1906, Skinner gave plaintiff a certificate showing that he, Skinner, as voting trustee, held for plaintiff the stock referred to in said contract of July 23d of the par value of seventeen thousand one hundred dollars, and delivered to him bonds to the amount of seventeen thousand one hundred dollars, stating to plaintiff that the stock was part of his security and that the bonds constituted the security for the fifteen thousand dollars he had loaned to the company and that they gave him a first lien upon all the company's property, the same as though plaintiff had a first mortgage on said property. The plaintiff relied wholly upon these statements of Skinner and took the bonds. He did not himself understand the nature or import of a bond issue. The bonds were part of a bond issue of one hundred thousand dollars secured by said property and were a lien *pari passu* with the remaining bonds. Instead of giving him a lien on all the property exclusively for his own bonds, they gave him, in effect, a lien on a little over one-sixth of the property. Plaintiff did not discover the fraud complained of until August, 1908. He then made efforts from time to time to prevail upon the defendants to return to him the mortgages or repay the money, but was put off by promises until finally on March 1, 1909, he made demand in writing upon all of the defendants, that they return to him said mortgages or the fifteen thousand dollars in money, therewith offering to return to them the bonds and stock. One thousand and twenty-six dollars had been paid to him as interest; the balance has not been paid. It is further alleged and found "that said defendant, Los Angeles Stove Company, is insolvent, and its property is not of any value whatever, and that said bonds are of no value at all, but are wholly worthless." This relates to the date of the beginning of the action, March 5, 1909. There is no averment or finding of the value of the property, bonds, or stock at any other time. No facts are alleged explaining the failure sooner to discover the fraud. There is no offer in the complaint to deliver up or bring into court the stock or bonds for the use of the defendants, or either of them, conditionally, or at all.

It does not appear, either from the complaint or from the findings, that the mortgages referred to have been satisfied, released, or discharged. They appear to have been given over to Skinner, who was acting as agent or trustee for the plaintiff. It is alleged and found that the plaintiff *believes* that the mortgages have been delivered over to the Stove Company, canceled and released. The belief of the plaintiff is not a material fact. It is not stated that the bonds were to be, or were in fact, accepted by plaintiff in payment or satisfaction of the mortgages. If the mortgages remained in the possession of Skinner, where the statement of facts made by the record leaves them, they would still be available to the plaintiff as security for his debt, and he could maintain an action of foreclosure thereof. It may be that Skinner cannot, while retaining possession of the mortgages, urge this as a defense to the action. His counsel does not press it in the argument. It may be added that although a demand was made of Skinner for the return of the mortgages, there is neither an allegation nor a finding that he refused to make such return. As these omissions in the statement of facts may be removed by amendment, in case of a new trial, we will not consider them further.

If the case is considered as an action for damages alone, the judgment is not supported either by the findings or by the complaint. There is no express allegation of damages, nor any statement of facts showing substantial damages. The findings are in the language of the complaint on this subject and do not help the matter. The measure of damages applicable in this action, in the absence of any claim of special damages, is the excess of the value of the mortgages over the value of the bonds exchanged therefor, assuming that such exchange actually took place, such values being taken as of the time of the exchange. (4 Sutherland on Damages, sec. 1171, p. 3402; 1 Bigelow on Fraud, p. 627.) This rule applies, at least, in all cases where there are no supervening circumstances which render the values at some other time material to the injury arising from the fraud. No such circumstances, and no facts showing special damages, appear either in the pleadings or findings. The finding that in March, 1909, the property was of no value and the bonds worthless does not establish the fact that they were not worth more than the mortgages when they were exchanged therefor on November 6, 1906, more than two

years before. The injury from such exchange, if any there was, was complete when it occurred. Subsequent deterioration in the value of the property would reduce the value of the bonds, but this reduction would be attributable to the causes which impaired the value of the property and not to the fact that the mortgages had been exchanged for the bonds. The fact that the plaintiff's bonds were not an exclusive first lien would imply that the bonds were of less value than the mortgages, but no facts are alleged from which it is possible to ascertain the difference in such values, or to indicate that it was substantial. This might authorize the recovery of nominal damages, but if the case is viewed as one to recover damages alone, these facts would not support a judgment for the whole sum loaned, with interest, such as was given here.

The answer alleged laches on the part of plaintiff, as a bar to the right to rescind. The finding was that the plaintiff was not guilty of laches in demanding rescission or in bringing the suit. We think this finding is contrary to the law and the evidence. A person having a right to rescind must make the offer ''promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind.'' (Civ. Code, sec. 1691. See, also, *Barfield* v. *Price,* 40 Cal. 542; *Burkle* v. *Levy,* 70 Cal. 254, [11 Pac. 643]; *Bailey* v. *Fox,* 78 Cal. 389, [20 Pac. 868]; *Harrington* v. *Patterson,* 124 Cal. 542, [57 Pac. 476].) It is not claimed that plaintiff was hindered by duress, menace, undue influence, or disability, or that he was not aware that he would have a right to rescind upon discovery of the falsity of the representations on which he acted. It is a well settled part of the rule as to discovery that: ''The plaintiff's ignorance of his rights, as a general rule, negatives any laches on his part, but this rule is subject to the principle that notice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is, in the eye of the law, equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose'' (6 Cyc. 305). The promptitude necessary to escape the estoppel of laches will depend on the circumstances of the case. In general the right is lost if, during the delay, conditions have changed so that a rescission will cause to the other party mate-

rial loss which he would not have suffered if it had been demanded sooner.

According to the case made by the complaint, the plaintiff was misled in only one point: he was led to believe that the bonds issued to him, representing seventeen thousand one hundred dollars of the one hundred thousand dollar bond issue, were an exclusive first lien on the property, and not a lien in common and of equal priority with the remainder of the one hundred thousand dollars issued. The contrary of this is strongly indicated by the attending facts brought to his knowledge before he received the bonds. The contract of July 23, 1906, was the initial proceeding. It was read over to him, he signed it and a copy of it was given to him at the time. He does not deny, but practically admits, full knowledge of its contents. It recited that he had subscribed for "$15,000.00, out of the $100,000.00 issue of six per cent ten year gold bonds" of the company, at the rate of ninety dollars for each one hundred dollar bond, with an equal amount of company stock. By its terms, he agreed that he would not sell his bonds for less than par, and the company agreed that it would try to "sell the balance of the $100,000.00 bond issue at par," and that at the end of one year from the date of the agreement it would repurchase from him at ninety-five dollars each, all of his bonds then remaining in his hands. He was at that time about sixty-six years of age. His natural faculties were not seriously impaired by age. He had had considerable experience in business. For many years he had owned and conducted a factory, making boilers, tanks, pipe-fittings and the like, doing a business varying from fifteen thousand dollars to one hundred and fifty thousand dollars a year. He was evidently a man of at least ordinary sagacity. He testified that: "I suppose I knew the bonds were placed upon the property of the Los Angeles Stove Company." He also knew that at least three other persons intended to buy some of the bonds. He did not testify to any fact that would justify the inference that his bonds were to have preference or priority over other bonds of the same issue sold to other persons. It is difficult to understand how a man of his years and experience could believe that his bonds were to be preferred over the others. He does not attempt to give any grounds for such belief.

He further testified that he "took up the document that only bore 6%," meaning the bonds, and "gave up a document that bore 8%," meaning the fifteen thousand dollar mortgage, "because they were to take the bonds at the end of the year at 95%," and further, "I surrendered the securities and note bearing 8% and took securities bearing only 6%, because I made up the difference by buying bonds at $90.00 per bond and they agreed to pay me back at the end of the year, if I wanted it, at $95.00 per bond. I certainly wanted it and so stated. That was my understanding. Mr. Skinner figured out that when I released whatever security I had and took bonds, that I was paying $90.00 a bond." It appears, therefore, that he not only knew that his bonds were a part of an issue of one hundred thousand dollars secured by some sort of a lien on the property of the company, but he also understood that when he accepted the bonds he relinquished the other securities previously held by him for the debt. The reason for this was explained by Skinner, who testified that plaintiff advanced the fifteen thousand dollars to pay off all prior liens, so that the property would be clear as security for the bonds, and took the fifteen thousand dollar mortgage to hold as security until the bonds were ready for delivery, when it was to be relinquished, and that for that reason it was not put on record. All the circumstances corroborate this testimony. The plaintiff knew the mortgage was not recorded, but was, as he claims, ignorant of the plan constituting the reason therefor.

In his testimony, plaintiff is insistent that it was never his intention to loan the money for more than one year. He said: "I never figured on loaning them money beyond one year"; and this he repeats many times. According to the contract, of which he had a copy, the year expired on July 23, 1907. The ten thousand dollars was actually loaned on August 11, 1906. There was no compliance by the company, or demand by him for compliance, with the contract to repurchase his bonds at the end of the year from either of said dates. The bonds were delivered to him in November, 1906, and he considered that as the beginning of the year. Not long after the bonds were delivered he learned that there was something wrong. He testified as follows: "It was quite a while after the bonds were delivered to me before I discovered that there

had been a misunderstanding or misrepresentation upon anybody's part. It might have been a month, but I don't think it was a year. . . . It was possibly nine or ten months . . . before I discovered that it had been misrepresented to me." This would fix the time at September, 1907, at the latest. Yet he did nothing until November, 1907, when he tried to effect a settlement by obtaining his money, but was held off, he says, "owing to the condition of the money market." The semi-annual interest on the bonds was due on the seventh day of May and the seventh day of November each year. He received this interest for May, 1907. The November interest was not paid till December 7, 1907. At that time, according to his testimony above given, he knew that there had been misrepresentation. Interest for May, 1908, was never paid. Some time prior to that month he discovered that the bonds were "waste paper," as he termed it. Yet with all this notice of what he now claims was a fraud and all this knowledge of the evil consequences, he made no inquiry and sought no advice as to the legal *status* of the bonds as the "first lien" he says he was to have, or as to their equality with the other bonds of the same issue which he knew had been sold. He made demands for payment or settlement from Skinner and from the officers of the company from time to time, but he did not inquire of others and did not consult an attorney until October, 1908. Then he was advised and understood, as he says for the first time, that his bonds were merely an equal lien with the others, and not an exclusive first lien, on the property. In the mean time the property which he says he examined and believed to be worth twenty-five thousand dollars, in July, 1906, had depreciated to such an extent that prior to May, 1908, the bonds were mere "waste paper." And after consulting an attorney and learning the *status* of this security, he delayed until March 1, 1909, before demanding a rescission and offering to restore the bonds. The slightest inquiry would have disclosed to him the one thing he did not know, that is, that his bonds were only an equal lien with the others. Upon ascertaining in September, 1907, that it had been misrepresented to him, reasonable prudence required that he should make inquiry of others, rather than from the person whom he knew had been false to him. If he had done so he would have learned the fact he now considers so material, and

if he had been dissatisfied with his security, and wished to rescind, it would have been his duty to do so promptly. According to his own claims, the delay has been prejudicial to Skinner, the security having in the mean time become worthless in some way not disclosed by the evidence. There is no direct evidence of its value then or at any other time. Upon the rules we have stated, he has lost his right of rescission by his delay in ascertaining his condition after having been put on inquiry, and by the delay in asserting his rights thereafter.

There are other minor particulars in which the findings are not sustained by the evidence, and some defects in the complaint to which we have not adverted. A new trial must be ordered and the plaintiff, if so advised, may amend his complaint, under leave from the trial court.

The judgment and order are reversed.

Melvin, J., Angellotti, J., Sloss, J., Lorigan, J., and Henshaw, J., concurred.