[Civ. No. 2965.   Fourth Dist.   Feb. 27, 1942.]

CLAUDE T. WEADON et al., Respondents, v. ELIAS SHAHEN et al., Appellants.

John A. Hadaller for Appellants.

Guthrie & Curtis for Respondents.

MARKS, J.—This is an appeal from a judgment restrain-

ing the sale of plaintiffs' property under an execution issued on a judgment rendered in the case of *Edward Rainey, Superintendent of Banks of the State of California* v. *Clarence C. McIntosh and Metta McIntosh.* Plaintiffs have moved to dismiss this appeal. Defendant Shay is sued in his official capacity as Sheriff of San Bernardino County. Hereafter we will refer to Elias Shahen as the defendant.

Prior to September 17, 1936, Clarence C. McIntosh and Metta McIntosh were indebted to the San Bernardino County Savings Bank which had been taken over by Edward Rainey, then the Superintendent of Banks of the State of California. In his official capacity Rainey brought suit against Mr. and Mrs. McIntosh and judgment was recovered against them. The judgment was dated September 17, 1936, and was filed and entered the following day. Friend W. Richardson had succeeded to the office of Superintendent of Banks but was not substituted as plaintiff in the action. The important part of that judgment reads as follows:

"It is therefore ordered, adjudged and decreed that Plaintiff recover of and from Defendants the sum of Twelve Hundred Thirteen and 76      dollars ($1213.76), together with the sum of $233.93 interest from April 16, 1934, to date hereof; together with attorney's fees in the sum of xxxx, total of $1213.76, with interest thereon at the rate of seven per cent per annum from date hereof until paid, and with plaintiff costs and disbursements amounting to the sum of $10.00."

On September 22, 1936, Friend W. Richardson, as Superintendent of Banks, caused the following abstract of judgment to be recorded in the office of the County Recorder of San Bernardino County:

"In the Superior Court of the State of California In and for the County of San Bernardino. Edward Rainey, Superintendent of Banks of the State of California, Plaintiff, -vs- Clarence C. McIntosh and Metta McIntosh, Defendants. No. 37045. Date of Entry of Judgment: September 18th, 1936. Judgment Debtors: McIntosh, Clarence C., McIntosh, Metta. Judgment Creditors: Edward Rainey, Supt. of Banks, etc. Amount of Judgment: Judg. 1213.76. Int. 233.93. Costs. 10.00. Where entered in Judgment Book: Vol. 70. Page 287."

Mr. and Mrs. McIntosh owned the two lots in question, situated in the mountains north of San Bernardino. By deed, dated September 6, 1938, and recorded September 10,

1938, they conveyed these lots to Elienor H. Braniger. She paid $250 for them but obtained no certificate of title.

On September 6, 1938, Mrs. Braniger agreed to sell the lots to Claude Weadon and Raymond L. Cannon for $250. When the purchasers had paid the full purchase price Mrs. Braniger conveyed one of the lots to Claude T. Weadon and Madge Weadon, his wife, and the other to Raymond L. Cannon and Opal Lee Cannon, his wife. Both deeds were recorded on March 31, 1939. No search of title to the lots was made and it is admitted that neither Mrs. Braniger nor her grantees had any actual notice or knowledge of the judgment against Mr. and Mrs. McIntosh nor of the recorded abstract of that judgment.

In October, 1938, Mr. and Mrs. Weadon commenced the construction of a mountain cabin on their lot. This cabin was completed about June 1, 1940, at a cost of about $2300. $300 of this amount was expended after January 8, 1940.

In April, 1939, Mr. and Mrs. Cannon commenced the construction of a mountain cabin on their lot which they completed about October 1, 1940, at a cost of about $2300, $400 being expended after January 8, 1940.

During the last of December, 1939, E. W. Wilson, who had succeeded to the office of Superintendent of Banks, filed his petition in the Superior Court of San Bernardino County for an order authorizing him to sell the remaining assets of the San Bernardino County Savings Bank to Elvin E. Webb who had bid $12,600 for them. The petition was set for hearing for January 8, 1940, and notice was ordered to be given by the posting of a copy of the court's order for five days.

A list of the assets to be sold was attached to the petition. When the matter came on for hearing it was discovered that one judgment had been omitted. By leave of court there was added to the list, under the heading "Judgments," "Claud A. Adams 3,102.39 (now on appeal re execution after 5 years 4 Civ. No. 2465)." Included among the judgments originally listed was "5920—C. C. McIntosh 1,213.76."

Elias Shahen, defendant here, bid $21,500 for the assets which bid was accepted and the sale confirmed, and the assets, including the Adams judgment, were subsequently assigned to him.

A special deputy superintendent of banks, in charge of the liquidation of the San Bernardino County Savings Bank,

gave the following testimony about a conversation with Shahen concerning the value of the judgments: "We discussed the value of every asset that we had for sale, including the sale of these judgments, or the value of these judgments, and I told him I did not think the value of the judgments—they had no value, there was no value to them. I didn't know as they had. It seems that they do, but I told him they did not."

On the other hand, Shahen testified that in estimating the value of the assets to be sold for the purpose of determining the amount of his bid, he placed an estimated value of between seventy-five and eighty per cent of their unpaid balances on the secured notes, and between fifty and sixty per cent on the unsecured notes and judgments.

A former deputy superintendent of banks produced a copy of a letter to the depositors in the San Bernardino County Savings Bank in which the assets of the defunct bank were listed and no value was placed on the judgments. There is nothing in the record to suggest that Shahen had any knowledge of this letter.

The trial court found that the abstract of judgment did not comply with the provisions of section 674 of the Code of Civil Procedure and that, therefore, there was no lien created on any property belonging to Mr. and Mrs. McIntosh.

Counsel for plaintiffs seek to support this finding upon two grounds: (1) That the judgment is too uncertain to be intelligible; and (2) that the abstract of judgment was not in due form in that (a) Rainey was not Superintendent of Banks when the judgment was recovered, (b) that unintelligible abbreviations were used in it, and (c) that there are no dollar signs before the figures there appearing.

It must be admitted that the judgment was most carelessly drawn. However, we experience no difficulty in gathering from it that judgment was rendered for $1213.76, principal, $233.93, accrued interest, and $10 costs. (See, *Snodgrass* v. *Hand*, 220 Cal. 446 [31 Pac. (2d) 198].) The words and figures "total of $1213.76, with interest thereon at the rate of seven per cent per annum from date hereof until paid," are surplusage and may be disregarded.

The argument that the abstract of judgment is void because Edward Rainey had ceased to be Superintendent of Banks and had been succeeded by Friend W. Richardson

at the time the judgment was rendered and the abstract recorded lacks merit. The office of Superintendent of Banks is a continuing state office without regard to the individual who may fill it. The Superintendent of Banks, as an individual divorced from his office, had no interest in the action. The judgment, therefore, was an incident of the office and not of the individual. The action was brought to perform a duty pertaining to the office which was especially enjoined by statute. Such an action does not abate by reason of the termination of the term of office of the incumbent (1 Am. Jur., p. 49) and we can see no good reason why it may not be continued by the successor in the name of his predecessor in office. (Sec. 385, Code Civ. Proc.) The abstract of judgment certainly conveyed the information to any one who might inquire that the Superintendent of Banks of the State of California had secured a money judgment against Mr. and Mrs. McIntosh.

There is nothing in *Huff* v. *Sweetser*, 8 Cal. App. 689 [97 Pac. 705], to the contrary. This case involved the lien of a judgment rendered against Grace B. M. Emerson after she had married and when her true name was Grace B. M. Odell and under which name she had sold the property upon which the lien of the judgment was claimed. The court was of the opinion that no lien was created because a search of the record by the purchaser would not have disclosed any judgment rendered against his grantor, Mrs. Odell, which was her correct name when he purchased the property and when the judgment was obtained against her in the name of Emerson. We have no such situation here. A search of the record would have disclosed the judgment against Mr. and Mrs. McIntosh.

We need not consider the argument made as to each of the abbreviations used in the abstract of judgment. They are all in common use, are easily understandable, and do not render the instrument void. (See, 6 Cal. Jur. 289, and cases cited; *Hanford Mercantile Store* v. *Sowlveere*, 11 Cal. App. 261 [104 Pac. 708].)

We cannot regard the omission of the dollar marks before the figures in the abstract of judgment important. Those figures follow the words "Amount of Judgment." Such judgments for which liens may be secured are rendered for dollars and cents. (See, *Dyke* v. *Bank of Orange*, 90 Cal. 397 [27 Pac. 304].)

We therefore must conclude that the recording of the abstract of judgment created a valid lien on the real property in San Bernardino County owned by Mr. and Mrs. McIntosh.

The trial court found that on the day of the hearing of the petition to confirm the sale of assets, the superior court permitted the amendment of the petition by the insertion of the judgment against Claud A. Adams among the listed assets and required no new notice to be given. Plaintiffs argue that as no notice of the hearing of the petition, as amended, was given, the entire proceeding is void and that Shahen acquired no title to any of the property described therein. It cannot be questioned that if the Adams judgment had not been written into the petition on the day of the hearing the notice given was entirely proper. Adams is not contesting the validity of the sale of the judgment against him.

We are cited to no decisions under the Bank Act on this problem. However, there might be an analogy between this class of sales and sales under execution.

The case of *Mitchell* v. *Alpha Hardware & Supply Co.*, 7 Cal. App. (2d) 52 [45 Pac. (2d) 442], involved the legality of a sale under execution where the notice of sale described part of the property sold as being in the wrong county. In upholding the validity of the sale the court said:

"We find no allegation in the complaint, and no testimony in the record indicating any fraud in the sale conducted by the sheriff, nor do we find anything in the record indicating that the amount of the bid was not adequate, or that the properties were not sold for all that they were reasonably worth. Neither is there anything in the complaint or in the record indicating that any errors made by the sheriff in his notice of sale misled any purchasers, or prevented a fair and honest sale of the properties. The notice indicating the properties to be sold referred to the judgment, and in some part of the notice mentioned Nevada instead of Sierra County. There being nothing in the record and nothing in the complaint indicating that the notice was misleading, prejudicial or injurious, we think the rule set forth in the case of *Frink* v. *Roe* 70 Cal. 296 [11 Pac. 820], applicable, to wit: 'A failure to give proper notice of sale of real property under execution does not invalidate the sale'."

As there is nothing before us to indicate fraud or wrong

in the sale, other than, perhaps, the error in allowing the amendment to the petition, the rule announced in the Mitchell case should be applied here. Further, the order confirming the sale has long since become final.

The trial court found ''that said judgment was appraised at no value by said Superintendent of Banks, and was represented to said defendant, Elias Shahen, to be of no value, and was considered to be of no value by said defendant, Elias Shahen, at the time he purchased the same; that said defendant, Elias Shahen, paid no consideration for said judgment . . .''

We can find no evidence in the record supporting the important part of this finding. Evidence by the special deputy superintendent of banks that he regarded the McIntosh judgment to be of no value and so informed Shahen cannot negative Shahen's testimony that he regarded the judgments of value and included his estimates of those values in the total price bid by him. The assets were sold as a unit and certainly the price of $21,500 paid for them is a substantial consideration. In view of Shahen's testimony a portion of that sum must be held to have been paid for the McIntosh judgment.

The trial court found that the conduct of Shahen and the Superintendent of Banks constituted laches which prevented Shahen from enforcing his lien. The argument on this question points out the lapse of time between September 18, 1936, the date of filing and entering the McIntosh judgment, and October 11, 1940, when execution on that judgment was issued. Plaintiffs further point to the fact that during this time they spent money in purchasing the lots and erecting their cabins. Particular stress is laid on the admonition of the law to the Superintendent of Banks to promptly collect the assets of a bank which he takes over.

The doctrine of laches is based on knowledge of the facts and an acquiescence in them to the damage of the other party. (*Verdugo Canon Water Co.* v. *Verdugo*, 152 Cal. 655 [93 Pac. 1021]; *Garstang* v. *Skinner*, 165 Cal. 721 [134 Pac. 329]; 10 Cal. Jur. 528, et seq., and cases cited.)

The evidence is undisputed that the deputies superintendent of banks, or at least one of them, caused an investigation to be made after September 18, 1936, to discover any assets that might belong to Mr. or Mrs. McIntosh; that some heavily encumbered property was found in Los Angeles

County but that none was discovered in San Bernardino County; that he, or they, did not know that Mr. and Mrs. McIntosh owned the lots in question and did not know of the sales to Mrs. Braniger or to the plaintiffs; that they did not know that the plaintiffs had improved the properties. With this undisputed evidence in the record they cannot be held guilty of laches as the important element of knowledge is lacking so that no inference of acquiescence can be drawn.

Shahen testified he first learned in September, 1940, that Mr. and Mrs. McIntosh had formerly owned the lots in question; that prior to that time he knew nothing of those lots nor of the McIntosh ownership of them nor that plaintiffs had any interest in them or had improved them. This evidence is undisputed. There is an entire lack of anything pointing to knowledge or acquiescence upon which laches must be based.

The trial court found that Shahen was estopped to enforce his judgment by execution sale.

The necessary elements of estoppel are set forth in 10 Cal. Jur. 627, as follows:

"In general, four things are essential to the application of the doctrine of equitable estoppel: first, the party to be estopped must be apprised of the facts; second, he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; third, the other party must be ignorant of the true state of facts; and fourth, he must rely upon the conduct to his injury."

We have already summarized Shahen's testimony concerning his lack of knowledge of the lots in question, of their ownership, and of the improvements placed upon them by plaintiffs. Knowledge is an essential element of equitable estoppel and without knowledge there can be no such estoppel.

Finally, the trial court found that as plaintiffs had offered to do equity, and as their offer had been refused, defendant should be enjoined from proceeding with his execution sale. The offer referred to is an offer made by plaintiffs in open court to pay defendant $300, which was then the admitted value of the two lots without the improvements. In arguing this question counsel for plaintiffs makes frequent, if veiled, reference to that famous trial of fiction where Portia starred.

No matter how seriously the plaintiffs may expect sympathy because of the predicament in which they find themselves,

we must find a lawful reason to support the judgment if it is to be affirmed. This we cannot do. We cannot, as Portia did, find a convenient statutory penalty to defeat the claim against them. The question of the power of a court of equity to permit plaintiffs to remove their improvements before the sale, if a sale may still be made, is not now involved and need not be considered.

The motion to dismiss is denied. The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.