[Civ. No. 23464. Second Dist., Div. Three. July 20, 1959.]

GERTRUDE G. EISCHEN, Plaintiff, v. GEORGE W. EISCHEN, Respondent; E. GERLINGER et al., Real Parties in Interest and Appellants.

McIver & Green, Paul G. McIver and Robert Miller Green for Appellants.

Von Herzen & Laidig and Samuel L. Laidig for Respondent.

SHINN, P. J.—Gertrude G. Eischen and George W. Eischen were husband and wife, having intermarried August 14, 1929, in Mexico and in California in 1931. November 4, 1943, Gertrude sued for divorce; George defaulted; an interlocutory decree was entered December 7, 1943, and a final decree April 11, 1945. They remarried August 25, 1945. Gertrude died in April 1956. She left no will and George was appointed administrator of her estate. Gertrude had two children by a former marriage. These are the appellants, Edward Gerlinger and Florabelle Gerlinger Patterson.

The present controversy arose from the following facts: Gertrude owned as her separate property the premises in Montebello where the couple for many years lived and conducted a flower shop. In 1932 she declared a homestead on the property. The effect of the final decree of divorce, if valid and unimpeached, was to terminate George's homestead interest in the property and to reduce his interest as a surviving husband to one-third. (See *Zanone* v. *Sprague*, 16 Cal.App. 333 [116 P. 989]; 16 Cal.Jur.2d 603.)

January 28, 1958, George gave notice to appellants of a motion to vacate the final decree upon the ground that entry of the same was procured by means of Gertrude's fraud upon him and upon the court. The motion was heard upon supporting affidavits and an affidavit in opposition, and was granted. It is urged on the appeal from the order that there was no substantial evidence of Gertrude's fraud and that the attack upon the decree was barred by laches.

The contention of appellants that there was no substantial evidence of fraud is unavailing. It was shown by the affidavit of the attorney for appellants, who was also Gertrude's attorney in the divorce, that after the interlocutory decree was entered, and upon an occasion, the date of which was not stated, Gertrude informed him that she and George had become reconciled, George having promised to quit excessive drinking, and that she desired to have the action dismissed; she signed a request for a dismissal, it was signed by the attorney, was forwarded to the clerk for filing but was not filed for the reason that it was not signed by George; another one was prepared and given to Gertrude for George to sign but was never signed. In April 1945, Gertrude informed the attorney that George had continued his drinking and asked whether a final decree could be entered. An affidavit was prepared, was executed by Gertrude and upon presentation of the affidavit to the court the final decree was signed and entered.

It was represented by Gertrude's affidavit that she and George had agreed upon a reconciliation on condition that he quit drinking to excess, that he had broken his promise, and that they had resumed living under the same roof but had not cohabited as husband and wife.

It was shown by the affidavit of George that he moved out of the home a few days after the interlocutory was entered but returned almost immediately at Gertrude's request and that marital relations were resumed and continued to the date of Gertrude's death. In April 1945, Gertrude informed him that she had previously requested her attorney to stop the divorce proceedings but that contrary to her wishes something had gone wrong and that a final decree had been entered; her attorney had advised her that red tape would be involved in setting aside the decree, that the easiest thing to do was for them to remarry and that the final decree would make no difference. Believing Gertrude, and having no legal advice and relying on the statement of the attorney, as related by Gertrude, he remarried her in August 1945. He did not learn of the manner in which Gertrude had caused entry of the final decree until after Gertrude's death. Supporting affidavits of several mutual friends of the parties corroborated George's averment that the parties lived together and cohabited until Gertrude's death.

It was a proper inference from the facts stated that if Gertrude had made no false representations and had concealed no facts from George he would have sought legal advice and would have learned that remarriage would not restore his rights under the homestead.

The order vacating the final decree implies that the court found all material facts in issue in favor of George and concluded that they established extrinsic fraud upon him and upon the court. We are bound by the court's findings and we agree with the conclusion. ▇▇ A court may vacate a final decree of divorce upon a showing that it was procured through extrinsic fraud. (*McGuinness* v. *Superior Court*, 196 Cal. 222 [237 P. 42, 40 A.L.R. 1110]; *Tomb* v. *Tomb*, 120 Cal.App. 438 [7 P.2d 1104]; *Rivieccio* v. *Bothan*, 27 Cal.2d 621 [165 P. 2d 677].)

▇▇ It is contended further that the attack upon the decree was barred by laches. Although in April 1945 George learned that the final decree had been entered, the motion was not made until September 1958. It is urged that by this long

delay the right to challenge the decree was lost. The contention is untenable. ■ Mere delay in the assertion of a legal right does not forfeit the right. ■ In considering a claim of laches the court will view all aspects of the case in the light of equitable principles. Ordinarily the claim will not be sustained unless it is shown that to reject it would result in prejudice to one who has relied upon the apparent acquiescence of another. (*Hiett* v. *Inland Finance Corp.*, 210 Cal. 293 [291. P. 414]; *Weadon* v. *Shahen*, 50 Cal.App.2d 254 [123 P.2d 88]; *Verdugo Canon Water Co.* v. *Verdugo,* 152 Cal. 655 [93 P. 1021].) ■ It is not contended that any prejudice was suffered by Gertrude through the lapse of time or that she would have derived any benefit had George made an investigation and assailed the final decree upon learning of her fraud.

■ For laches to be invoked as a bar to the assertion of a right, knowledge of the existence of a right and an apparent willingness to waive it must be shown. (*Chamberlain* v. *Chamberlain*, 7 Cal.App. 634 [95 P. 659]; *Hovey* v. *Bradbury*, 112 Cal. 620 [44 P. 1077].)

■ It was shown by the affidavit of Gertrude's attorney that he was a friend of both parties and had acted as attorney for each of them to the time of Gertrude's death. In his affidavit he denied that he had told Gertrude that there would be red tape connected with setting aside the| final decree, that the easiest thing for the parties to do was to remarry, and that the final decree "would not make any difference," but the trial court no doubt believed that Gertrude had represented to George that she had received that advice from the attorney, and that George believed that a remarriage would restore all rights of the parties that existed prior to entry of the final decree. This was a mistake of law, but it was a mistake that was induced by the statements of Gertrude. It appears that she had not received from the attorney advice as she represented to George, but having made the representations she could not have put George at fault for relying upon them. Nor could George be held at fault for his belief that they had received good legal advice. And it must be| remembered that George did not learn until after Gertrude's death that the manner in which the final decree was obtained rendered it subject to attack for fraud. Suppression of those facts with knowledge that they were unknown to George was a continuing deceit. To penalize George for relying upon the representations and concealment of Gertrude would be permitting her to profit by her own wrong.

■ George was appointed administrator of his wife's estate. He addressed his notice of motion to vacate the judgment to himself as administrator as well as to the appellants herein and to their attorney. It is contended that this was in violation of the rule that one cannot in an individual capacity sue himself in a representative capacity. There would have been merit in the point if the notice had not been given to appellants, who were the real parties in interest, or if they had not had an opportunity to appear and defend their rights. Or it may be that if no notice had been given except to himself as administrator the order vacating the decree would have been void as to creditors of Gertrude. But we do not see how directing the notice to himself as administrator could have deprived the proceeding of its adversary character. The appellants claimed as Gertrude's heirs. Whatever rights they had devolved upon them subject to administration upon the death of Gertrude. George, as administrator, was not purporting to represent them, as would have been the case if they had not been brought before the court. They had their day in court. In fact it does not appear that any party interested was not before the court. There was no one whose interests George had a duty to protect. Addressing the notice to himself as administrator was an unnecessary act and of no legal significance.

The order is affirmed.

Wood (Parker), J., and Vallée, J., concurred.