743 F.2d 709
 Ronald D. DURANCEAU, Plaintiff-Appellant,
v.
Janet S. WALLACE, Program Administrator of the Office of
Support Enforcement of the Department of Social and Health
Services, Alan J. Gibbs, Secretary of the Department of
Social and Health Services, and Robert E. Querry, Chief,
Office of Support Enforcement, Defendants-Appellees.
 No. 83-4259.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 7, 1984.
Decided Sept. 25, 1984.
 
 Peter H. Koehler, Jr., MacDonald, Hoague & Bayless, Seattle, Wash., for plaintiff-appellant.
 Daniel Radin, Seattle, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before PECK*, WRIGHT and FARRIS, Circuit Judges.
 FARRIS, Circuit Judge:
 
 I. INTRODUCTION
 
 1
 Washington law provides expeditious procedures for the state's Department of Social and Health Services to collect past due child support. R.C.W. Sec. 74.20A. Ronald Duranceau brought suit in federal district court, alleging that the procedures violated the due process clause of the fourteenth amendment by failing to afford him adequate notice and an administrative hearing. On motion for summary judgment, the district court found the statute constitutional. We affirm.
 
 II. STANDARD OF REVIEW
 
 2
 We review the district court's decision de novo because the case was decided on summary judgment, Thorns v. Sundance Properties, 726 F.2d 1417, 1418 (9th Cir.1984), or, alternatively, because the issues on appeal are questions of law. Walker v. Navajo-Hopi Indian Relocation Commission, 728 F.2d 1276, 1278 (9th Cir.1984).
 
 III. FACTS
 A. Duranceau's Case
 
 3
 Ronald Duranceau was divorced in 1977. The dissolution decree gave his wife custody of their two children and ordered him to pay monthly child support. Duranceau fell behind in his support payments. In 1981 he was adjudged by the court to owe $6,946. The Department of Social and Health Services, which acquired the right to receive the payments through subrogation and assignment, sent Duranceau a "Notice of Support Debt and Demand for Payment" in May, 1982. Meanwhile, Duranceau had won a judgment against the city of Tacoma which netted him over $16,000, after attorney's fees and costs. In August, 1982, the Department served Tacoma with an order to withhold and deliver $8,825 of Duranceau's judgment. A second order was served several weeks later for a greater amount ($9,128), reflecting support obligations that had accrued in the interim. Duranceau received a copy of each order in timely fashion. The first order described the statutory earnings exemption, but the second did not. After receiving each order, Duranceau sent a terse two-line letter to the Department requesting a "fair hearing." In October, 1982, the Department replied, informing Duranceau he was not entitled to an administrative hearing. The present suit, challenging the constitutionality of the Department's debt collection procedures, followed.
 
 B. Statutory scheme
 
 4
 The Department of Social and Health Services is empowered to collect child support as the subrogee or assignee of a judgment of the superior court. The Department first serves the debtor with a notice of the amount due and a "statement that the property of the debtor is subject to collection action." R.C.W. Sec. 74.20A.040. No sooner than 20 days later, the Department can serve an "order to withhold and deliver" on anyone believed to have property belonging or due to the debtor. R.C.W. Sec. 74.20A.080. The recipient of the order is to hold the debtor's property and, after 20 days, pay it over to the Department upon demand. Id. The debtor is served with a copy of the order at the same time as the garnishee. Failure to notify the debtor gives him or her an action for damages. Id.
 
 
 5
 Half of the debtor's "disposable earnings" are exempt from garnishment. R.C.W. Sec. 74.20A.090. Section 74.20A.080 requires that the earnings exemption be described in the "order to withhold and deliver."
 
 
 6
 The Department of Social and Health Services encourages the debtor to discuss any disagreements or defenses with the Support Enforcement Officer in charge of the case. If a dispute remains, the Department offers a hearing before its Conference Board as a kind of non-binding arbitration. These are informal methods of dispute resolution, not required by statute, and not under the purview of Washington's Administrative Procedure Act, R.C.W. Sec. 34.04. Cf. R.C.W. Sec. 74.20A.055 (where there's no court order establishing liability for support, the Department holds an administrative hearing on the question). The debtor's other recourse is to go to court. Section 74.20A.200 provides for judicial relief from an order to withhold and deliver "on the basis that no support debt is due and owing." The district court held that this statutory language does not limit the defenses a debtor may present to the court, E.R. 204, and Duranceau does not appear to contest this point on appeal.
 
 IV. LEGAL ANALYSIS
 
 7
 Duranceau argues that 1) due process requires a prompt post-garnishment administrative hearing, and 2) the Department violated due process by failing properly to notify him of the earnings exemption and the procedures for asserting his defenses.
 
 A. Hearing
 
 8
 In Endicott Johnson Corp. v. Encyclopedia Press, Inc., 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), the Supreme Court held that "the established rules of our system of jurisprudence" do not entitle a judgment debtor to "further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment." Id. at 288, 45 S.Ct. at 62. However, since "the established rules of our system of jurisprudence" have changed since 1924,[1] we will follow the suggestion of Mathews v. Eldridge, 424 U.S. 319, 332-35, 96 S.Ct. 893, 901-903, 47 L.Ed.2d 18 (1976), and weigh the relevant factors to determine whether the Washington procedures violate due process. These factors include the competing interests at stake, the risk of erroneous deprivation under existing procedures, and the value of substitute procedures.
 
 
 9
 1. Governmental interests. Washington enacted Sec. 74.20A because "[c]ommon law and statutory procedures governing the remedies for enforcement of support for financially dependent minor children by responsible parents have not proven sufficiently effective." R.C.W. Sec. 74.20A.010. It is hard to imagine a more compelling state interest than the support of its children. The problem of delinquent child support is national in scope, and has prompted Congress recently to enact strong measures to help states collect these debts. See Child Support Enforcement Amendments Act of 1984, Pub.L. No. 98-378 (enacted Aug. 16, 1984). A second and more general interest is the effective enforcement of judgments. Disputants resort to the courts, despite the delay and expense of litigation, because they can receive a final, binding, and enforceable resolution of their conflict. Any rule that requires hearings after judgment diminishes the value of judgments and threatens to turn litigation into an endless round of procedures with no possibility of vindication or ultimate success.
 
 
 10
 2. Judgment debtor's interest. A debtor may have valid defenses to the collection of a judgment. Duranceau contends that he was not credited with $538.38 in payments made and that he was entitled to the statutory earnings exemption. Summary garnishment methods make it more likely that defenses will not be aired until sometime after the creditor gets his hands on the disputed property. This problem is especially acute where the defense, such as that based on the earnings exemption, is designed to protect the debtor's subsistence.
 
 
 11
 3. Risk of erroneous deprivation. It is impossible to calculate the risk that the Department of Social and Health Services will erroneously deprive a child support debtor of property. Nonetheless, the risk of erroneous deprivation is less here than in cases where the deprivation depends on complex factual determinations (cases such as, for example, those concerning the termination of social security benefits). Here the sources of error are few: computational mistakes, clerical errors, or failures to take account of statutory defenses like the earnings exemption asserted by Duranceau.
 
 
 12
 4. The value of alternative safeguards. The procedures under challenge give the child support debtor two avenues of relief--informal administrative procedures (consultation with the Department and review by its Conference Board) and judicial relief in superior court, under the court's continuing jurisdiction over matters stemming from marital dissolutions. Duranceau dismisses the available administrative procedures as too informal and the judicial option as too costly and intimidating to child support debtors, whose claims and defenses are presumed to involve too little money to justify hiring an attorney. He argues that due process requires a prompt administrative hearing soon after the Department garnishes the child support debtor's property. This hearing would be a compromise between the existing options: more formal than existing administrative procedures, less complex and intimidating than judicial relief.
 
 
 13
 We are not convinced that the alternative proposed by Duranceau would reduce the risk of erroneous deprivation or otherwise serve the purposes of due process. One possible advantage of a formal administrative hearing over the informal processes presently available is that formal hearings, because they are accompanied by a record and explicit findings, are more easily reviewable on appeal. However, since the child support debtor can obtain judicial relief directly, this advantage is insignificant. One might also argue that a more formal administrative proceeding would be fairer and more objective than the informal proceedings offered by the Department. But this would be pure speculation. Duranceau did not invoke the Department's administrative procedures and has presented no evidence about their efficacy. Also, there remains the option of proceeding in superior court.
 
 
 14
 We have weighed the factors which bear on Duranceau's claim. Because of the strong governmental interest in the support of children and the expeditious enforcement of judgments, the relatively small risk of erroneous deprivation, and the negligible value of alternative procedures, we find that the present procedures do not violate due process.
 
 
 15
 Other courts to consider the constitutionality of post-judgment seizures of a debtor's property have reached varying results. Some have upheld the validity of the challenged procedures. See Brown v. Liberty Loan Corp., 539 F.2d 1355 (5th Cir.1976), cert. denied, 430 U.S. 949, 97 S.Ct. 1588, 51 L.Ed.2d 797 (1977); First National Bank v. Hasty, 410 F.Supp. 482 (E.D.Mich.1976); Halpern v. Austin, 385 F.Supp. 1009 (N.D.Ga.1974) (rejecting argument that judgment for alimony and child support different from "ordinary judgment" for "unconditional sum certain"); Katz v. Ke Nam Kim, 379 F.Supp. 65 (D.Haw.1974); Langford v. Tennessee, 356 F.Supp. 1163 (W.D.Tenn.1973); Moya v. DeBaca, 286 F.Supp. 606 (D.N.M.1968), appeal dismissed, 395 U.S. 825, 89 S.Ct. 2136, 23 L.Ed.2d 740 (1969). Others have reached the opposite result. See Finberg v. Sullivan, 634 F.2d 50 (3d Cir.1980) (en banc); Clay v. Fisher, 584 F.Supp. 730 (S.D.Ohio 1984); Dionne v. Bouley, 583 F.Supp. 307 (D.R.I.1984); Deary v. Guardian Loan Co., 534 F.Supp. 1178 (S.D.N.Y.1982); Betts v. Tom, 431 F.Supp. 1369 (D.Haw.1977). None of these cases involves precisely the same interests and procedures as the present case, so we need not analyze them at length. We have noticed, though, that in most of the cases which have found a due process violation, the judgment debtor received no notice of possible exemptions and the property seized was necessary for the debtor's subsistence. See, e.g., Finberg v. Sullivan, supra (property seized was bank account consisting entirely of Social Security payments); Betts v. Tom, supra (AFDC payments seized). By contrast, the present case concerns the seizure of a portion of a $16,000 tort recovery.
 
 
 16
 The parties place much emphasis on the cases challenging the validity of the interdiction of federal tax refunds owed to persons who themselves owe child support to the state's welfare department. See Jahn v. Regan, 584 F.Supp. 399 (E.D.Mich.1984); Nelson v. Regan, 560 F.Supp. 1101 (D.Conn.1983), aff'd on other grounds, 731 F.2d 105 (2d Cir.1984); Sorenson v. Secretary of the Treasury, 557 F.Supp. 729 (W.D.Wa.1982), appealed on other grounds, No. 83-3694 (9th Cir. submitted Feb. 10, 1984). While they do concern the collection of delinquent child support, the tax intercept cases differ significantly from the present case because 1) procedural protections under the tax intercept program are minimal, and 2) the cases concern, in part, the rights of spouses who do not themselves owe child support and who file joint tax returns with the child support debtor.
 
 B. Notice
 
 17
 Section 74.20A provides more elaborate notice than most of the statutes challenged in the cases concerning post-judgment seizures. Nonetheless, Duranceau argues that he did not receive adequate notice of (1) the exemption for 50% of wages, and (2) the procedures for challenging an order to withhold and deliver.
 
 
 18
 1. Notice of defenses. Section 74.20A.080 requires every order to withhold and deliver to "state in summary" the wages exemption. The first order described the exemption, but the second did not, apparently reflecting the Department's position that the tort recovery from Tacoma was not exempt. Duranceau contends that the second order was clearly meant to supersede the first. While this may be true, the first order nonetheless notified him of the existence of the wage exemption. It was then up to Duranceau to decide whether to assert the defense.
 
 
 19
 2. Notice of available procedures. The "Notice of Support Debt and Demand for Payment," E.R. 37-41 and the several orders to withhold and deliver, E.R. 42-53, describe the debtor's procedural rights in ordinary language with unusual clarity and detail. Duranceau nevertheless contends these notices are defective because they did not inform him of a) his right to assert all his defenses, and b) the procedures for challenging the seizure.
 
 
 20
 a) Right to assert all defenses. R.C.W. Sec. 74.20A.200 states that a debtor may seek judicial relief "on the basis that no support debt is due and owing." This statute, along with others, is included among the information sent to the debtor as part of the notices and orders. The district court found that this statute does not limit the defenses that may be presented to the superior court. Duranceau apparently accepts this conclusion but argues that the inclusion of the statute in the notice will discourage debtors from pursuing valid defenses in court. However, there are more prominent statements elsewhere in the forms urging the debtor in unqualified terms to seek relief in court.
 
 
 21
 b) Notice of procedures to challenge the seizure. Apparently Duranceau would have the Department summarize the relevant rules of civil procedure. This seems an excessive burden and would make the notice so long as to discourage the debtor from reading it.
 
 V. CONCLUSION
 
 22
 After weighing the interests at stake, the risk of erroneous deprivation, and the value of alternative procedures, we hold that the procedures prescribed by Washington's child support garnishment statute, R.C.W. Sec. 74.20A, meet the requirements of due process. We also hold that Duranceau received adequate notice of the impending seizure, possible defenses, and the manner of asserting those defenses.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The Honorable John W. Peck, Senior Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 [1]
 One indication that the "established rules of our system of jurisprudence" have changed since Endicott is the series of cases reexamining the pre-judgment seizure of property by an alleged creditor. See Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975)