[No. A031798. First Dist., Div. Three. July 12, 1988.]

REBECCA WIGHTMAN et al., Plaintiffs and Appellants, v.
FRANCHISE TAX BOARD et al., Defendants and Respondents.

**COUNSEL**

Hancock, Rothert & Bunshoft, Barry L. Bunshoft, Patricia Shuler Shimbor, Vito C. Peraino, and Ray L. Wong for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, and Mary C. Michel, Deputy Attorney General, for Defendants and Respondents.

Gerald F. Sevier, District Attorney, Gary E. Evans and John S. Higgins, Jr., Deputy District Attorneys, as Amici Curiae on behalf of Defendants and Respondents.

---

**OPINION**

**WHITE, P. J.—**

I

*Introduction*

By this taxpayers' action (Code Civ. Proc., § 526a),[1] appellants Rebecca Wightman (Wightman), Claude Malcolm Thompson (Thompson), and Jacqueline Jackson (Jackson) challenge the withholding of their state income tax refunds by respondents Franchise Tax Board (FTB) and the State Controller[2] pursuant to Government Code section 12419.5.[3] Section 12419.5 provides in part that "[t]he Controller may, in his discretion, offset any amount due a state agency from a person or entity, against any amount owing such person or entity by a state agency. . . . [¶] For purposes of this section, an amount owing to a person or entity by a state agency shall include any tax refund." Wightman's refund of $83.62 was offset due to her default in repayment of a student loan. Thompson's refund of $60 was offset due to his failure to make child support payments to the County of San Francisco pursuant to two stipulated child support judgments. Jackson's refund of $104 was offset due to the failure of her spouse to make child support payments to the County of Alameda pursuant to a child support judgment.

Appellants do not object to a tax refund intercept program authorized by section 12419.5, but contend that the implementation of the intercept program lacks certain procedural safeguards which are necessary to protect taxpayers' due process rights under the state and federal Constitutions. They also seek payment of the amount of the tax refund withheld.

Appellants moved for summary adjudication of issues raised by their first amended complaint. The trial court granted summary adjudication of issues

---

[1] The first cause of action of appellants' first amended complaint is alleged as a taxpayers' action. Appellants voluntarily dismissed their second cause of action.

[2] Kenneth Cory, the former Controller, was named in his official capacity as defendant. The name of the present Controller, Gray Davis, is substituted. (See Code Civ. Proc., § 385; *Weadon* v. *Shahen* (1942) 50 Cal.App.2d 254, 259-260 [123 P.2d 88].)

[3] All further statutory references are to the Government Code unless otherwise indicated.

in favor of respondents, ruling that the income tax refund intercept program adequately protects the due process rights of appellants under the California and United States Constitutions. The trial court subsequently granted summary judgment in favor of respondents, from which appellants appeal.

## II

### *Appellants' Standing as Plaintiffs and Contentions*

The record indicates that appellants were legally obligated to the state for at least the amount of the tax refund at the time the offset occurred.[4] Nevertheless, the trial court ruled, and respondents do not challenge on appeal, that appellants had standing to pursue their action as taxpayers under Code of Civil Procedure section 526a. (See *Carey* v. *Piphus* (1978) 435 U.S. 247 [55 L.Ed.2d 252, 98 S.Ct. 1042]; *McClelland* v. *Massinga* (4th Cir. 1986) 786 F.2d 1205, 1210 [plaintiff taxpayers challenging tax refund intercept program had standing to assert that they were entitled under due process to a preintercept hearing even though they may not have prevailed later at the hearing on the substantive issue].)

On appeal, appellants contend that the following preoffset procedures are necessary to safeguard California taxpayers' due process rights: (1) a preoffset notice letter be sent to all taxpayers whose refunds might be offset against an alleged debt which specifies (a) any defenses the taxpayer may have to the state's action, and (b) that the taxpayer has a right to appear and present oral and documentary evidence before an impartial arbiter who has authority to cancel the offset; (2) that the taxpayer be provided an opportunity to present oral and documentary evidence to an impartial fact finder who has authority to cancel the offset; and (3) that if the fact finder declines to cancel the taxpayer's offset, the factfinder provide written reasons to the taxpayer.[5]

---

[4] The record establishes that Wightman was in default in repayment of the student loan.

Jackson does not dispute that her husband was in default in payment of his child support obligations. Under California community property laws, the community property is liable in its entirety, with the exception of wife's *noncommingled* earnings, to satisfy a husband's child support obligations, whether incurred before or during his marriage to wife. (*Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 562-563 [63 Cal.Rptr. 13, 432 P.2d 709]; *In re Marriage of Smaltz* (1978) 82 Cal.App.3d 568, 571 [147 Cal.Rptr. 154].) By filing a joint tax return with her husband, Jackson commingled her earnings with her husband for purposes of seeking a tax refund.

Thompson contends that the judgment evidencing his child support obligations entered pursuant to his written stipulation on April 21, 1980, and upon which the offset was based, was set aside on August 11, 1980. However, subsequent to that time, Thompson's child support obligations have been judicially confirmed. (See *City and County of San Francisco* v. *Thompson* (1985) 172 Cal.App.3d 652 [218 Cal.Rptr. 445].) Thompson therefore is barred from seeking reimbursement of the tax refund withheld pursuant to this action.

[5] Although appellants contend that they did not receive any preoffset notice, they acknowledge that their own receipt or nonreceipt of such notice is not in issue, but rather whether the offset program adequately provides for such notice.

### III

*Administration of Intercept Program Under Section 12419.5*

Section 12419.5 expressly authorizes the Controller to offset any amount due a state agency by a taxpayer against the taxpayer's state income tax refund. The debts which constitute an "amount due" under section 12419.5 include, but are not limited to, unpaid child support (§ 12419.3, subd. (a)(1)) and delinquent student loans (§§ 12419.7, 12419.9).

The administration of the intercept program is governed by the State Administrative Manual (SAM).[6] State agencies desiring to effect an offset against possible tax refunds must first contact the FTB (or other department making the refund), furnish a list showing the name, social security number or other identification number, and the amount due from each person or company, in a form acceptable to the FTB. (SAM, § 8790.55.) SAM also requires that preoffset notice be given to the taxpayer: "If the amount due to a State agency does not represent an amount involving a tax, offset is normally made only after giving notice to the debtor (the person or entity against whom the offset has been requested) and providing him with an opportunity to present any valid objection he may have to the use of the offset procedure." (SAM, § 8790.3.)

As set forth below, the specific procedures utilized to effect the offset of child support debts differ from those for nonchild support debts.

A. *Offset of nonchild support debts.* The implementation of the intercept program for nonchild support debts is regulated by the FTB. The FTB annually formulates a "requirements package" for participation in the program. (See 1984 Franchise Tax Board Interagency Offset Program Requirements, hereafter cited FTB Requirements.) The FTB Requirements set forth the mechanics of the intercept process.

The FTB Requirements provide that each agency desiring to participate in the program must notify the FTB by letter by a certain date of its intent to participate and provide specific information, including a "debt file" containing the taxpayer's social security number, complete name, and the amount of the debt. The state agency letter must also indicate the agency's intent to notify debtors prior to offset of its intent to submit their names to

---

[6]The introduction to the SAM Manual explains its function for state agencies: "The State Administrative Manual (SAM) is a reference source for statewide policies, procedures, regulations, and information . . . .[¶] In order to provide a uniform approach to statewide management policy, the contents have the approval of, and are published by, the authority of the Director of Finance and the Director of General Services. [¶] Specifically, the Department of Finance is delegated authority to supervise the fiscal policy of the State and is empowered to regulate specific financial and business policies of the State."

the FTB for tax offset. (FTB Requirements, pp. 4-5.) The FTB Requirements include a sample preoffset letter for use by participating agencies, which letter notifies the debtor of the following: his or her name will be submitted to the FTB for offset for failure to clear an outstanding monetary obligation; the particular agency to whom the debt is owed; the amount of the debt; a citation to and explanation of section 12419.5; and that the debtor may submit objections to the offset either personally or in writing to the agency at the address specified within 20 days of the date of the letter, that upon receipt of objections a representative will review the case, and that if objections are not received or are unsubstantiated, the offset will proceed. (FTB Requirements, p. 7.) Many participating agencies utilize the sample preoffset letter or a similar version.

The state agency debt files are interfaced with the FTB's computer records to identify those individuals who paid taxes, have a refund due, and are in debt to a state agency. Individuals who are so identified have their refunds offset in the amount of the debt. (FTB Requirements, pp. 1-4.)

The FTB Requirements also require that the FTB send a postoffset notice to the debtor. The postoffset notice specifies that the refund owing has been reduced by an amount transferred to a specific state agency pursuant to sections 12419.4-12419.5, and the name, address, and telephone number of the agency and unit receiving the offset amount, in case the debtor has any questions. (FTB Requirements, p. 8.)

B. *Offset of delinquent child support payments.* The state's right to offset delinquent child support payments arises from the assignment of rights to such payments from recipients of benefits of aid to families with dependent children (AFDC) (42 U.S.C. § 601 et seq.), a federal, state, and county cooperative program. Title IV-D of the Social Security Act (42 U.S.C. § 651 et seq.) sets forth the framework for enforcement of child support obligations in relation to AFDC. As a condition to receipt of federal funding for AFDC, states are required to establish a child support enforcement plan administered by a IV-D agency which must comply with regulations promulgated by the federal Office of Child Support Enforcement (45 C.F.R. § 301 et seq.) As a part of their enforcement plan, states must provide for the assignment by AFDC recipients to the state of any right to support from the absent parent. (42 U.S.C. § 602(a)(26).) In California, the Department of Social Services (DSS) administers the enforcement plan and Welfare and Institutions Code section 11477 provides for the assignment of support rights.

Under federal regulations promulgated May 9, 1985 (45 C.F.R. §§ 303.72-303.102), as a condition to the state intercept of state income tax refunds, intercept must be preceded by: verification of the accuracy of the

amount due, a preoffset notice to the taxpayer advising of the amount due and the right to contest in accordance with the state's due process requirements, and a procedure for a prompt refund to the taxpayer of any amount improperly intercepted. (45 C.F.R. § 303.102.)

California's enforcement plan comports with federal requirements. (See generally Code Civ. Proc., §§ 708.730, subd. (c); 708.740, subds. (a) and (e); 708.770, subd. (g); 708.780, subd. (b).) In implementation of the enforcement plan, the DSS sends to local district attorney child support units a "Family Support Division Letter" containing the instructions to be followed in implementing offsets. The only cases eligible for offset are those where the support obligation owed is $100 or more and has been established by a court of competent jurisdiction. Before any debt is submitted for offset, the district attorney must certify under penalty of perjury that the debt meets these requirements, that he or she has verified the amount past due, the accuracy of the obligor parent's social security number, and that the county has a copy of the court order and copies of the obligor parent's payment history or an affidavit from the nonobligated parent attesting to the amount past due. (See also Code Civ. Proc., § 708.730, subd. (c).) Each district attorney child support unit then submits a file of unpaid judgments to the DSS which in turn forwards the requisite information to the FTB. The DSS instructions also require that a preoffset notice be sent to the taxpayer which contains the following information: that a judgment for child or child and spousal support has been entered and the individual's name has been sent to the FTB; the amount past due; the statutory basis for the offset; the name, address, and telephone number of the county child support unit to contact for questions, and that the reverse side pertains to appeal rights. The reverse side, captioned "Appeal Information," provides: "If you or, in the case of a joint income tax refund, your spouse disagree with the amount(s) owed, either of you may contact the county listed on the reverse side by returning a copy of this notice with an explanation or proof of payment. Possible reasons why you may disagree with this action are: No support judgement [sic] has been entered against you, the support amount(s) shown as past due is incorrect, your support obligation(s) has been discharged through bankruptcy, or California Community Property laws do not apply and your spouse's portion of the tax refund should be returned. [¶] Your response within 30 days of the date of this notice will assist the county in correcting its records before your income tax refund(s) is offset."

The taxpayer also receives a postoffset notice informing him of the offset and that any objection must be filed with the district attorney identified in the notice within 15 days. (Code Civ. Proc., § 708.770, subd. (g).)

Pursuant to the revised DSS instructions for the tax year 1986, of which we take judicial notice, the taxpayer may object to the offset upon receipt of

either the preoffset notice or the postoffset notice. If the taxpayer objects, the district attorney is required to audit county records, obtain the necessary legal documents from the taxpayer, and report written findings. If the matter cannot be resolved by the district attorney, the district attorney must provide the taxpayer with a written form requesting administrative review. A formal administrative review by either the county or state will be done, either face-to-face or by telephone with the taxpayer. If the objection is made after the offset and an error is discovered, the refund withheld must be immediately returned to the taxpayer. The taxpayer is also entitled to a court hearing on his objection.

## IV

### Pertinent Case Law

Although neither the California Supreme Court nor the Courts of Appeal have adjudicated the issue of a tax refund intercept program's compliance with federal or state procedural due process requirements, a number of federal courts have done so. (See, e.g., *McClelland* v. *Massinga, supra,* 786 F.2d 1205; *Knisley* v. *Bowman* (W.D.Mich. 1987) 656 F.Supp. 1540; *Jahn* v. *Regan* (E.D.Mich. 1984) 584 F.Supp. 399; *Marcello* v. *Regan* (D.R.I. 1983) 574 F.Supp. 586.)  ▮  Although we are not bound by these federal decisions, they are instructive and entitled to great weight. (*People* v. *Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].) These decisions recognize the United States Supreme Court decision of *Mathews* v. *Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893] as the seminal case providing guidelines for the determination of whether the government's predeprivation procedures adequately protect an individual's due process rights.

In *Mathews,* the court reviewed the procedures governing termination of disability benefits under the federal Social Security Act. A state agency may determine that a worker is no longer eligible for disability benefits and cause the benefits to be terminated without an evidentiary hearing. Upon such determination, the state agency must provide the worker with written notice of the reasons for its decision. Thereafter, the worker may request an evidentiary hearing and ultimately seek judicial review.

In determining whether these procedures satisfied a worker's due process rights, the court held an evidentiary hearing was not required prior to the termination of benefits. The court identified three factors that must be weighed to determine a procedure's conformity to due process: "More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action;

second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews* v. *Eldridge, supra,* 424 U.S. at pp. 334-335 [47 L.Ed.2d at p. 33].)

The court noted that although an evidentiary hearing must precede the termination of welfare benefits, which are based exclusively upon the recipient's financial need, disability benefits are generally unrelated to the worker's income or support from many other sources, and their termination therefore presents a potentially lesser deprivation. (*Mathews* v. *Eldridge, supra,* at pp. 340-341 [47 L.Ed.2d at pp. 36-37].) The court further noted that the information critical to the entitlement decision as to disability benefits could likely be communicated more effectively through written documents than oral presentation. (*Id.,* at p. 345 [47 L.Ed.2d at p. 39].) The court finally noted as an important consideration the substantial "administrative burden and other societal costs that would be associated with requiring, as a matter of constitutional right, an evidentiary hearing upon demand in all cases prior to the termination of disability benefits." (*Id.,* at p. 347 [47 L.Ed.2d at p. 40].)

In *Knisley* v. *Bowman, supra,* 656 F.Supp. 1540, Michigan taxpayers filed an action challenging the state tax refund intercept program as violating their procedural due process rights. The plaintiff taxpayers were either in default or married to persons in default under court orders for child support, or in default in repayment of county funds advanced for emergency relief pursuant to written agreement. Under the state procedures implementing the federal requirements discussed in part III B. above, the Michigan DSS sent a preoffset notice informing the taxpayer of the agency's intent to refer the taxpayer to the state department of treasury for collection of specified unpaid obligations, the agency to contact to contest any obligation, and of the opportunity of the nonobligated spouse to protect his or her share of the refund in the case of joint tax returns. If the offset went forward, a postoffset notice was sent informing the taxpayer that any questions he may have with respect to the offset could be addressed to the agency identified in the notice. The court held "these procedures provide adequate information to apprise persons affected of their rights in light of the anticipated State action and that the opportunity for informal hearings provides them a means to challenge the action." (*Id.,* at p. 1551.) The court therefore concluded the taxpayers' procedural due process rights were not violated.

In *McClelland* v. *Massinga, supra,* 786 F.2d 1205, the federal Fourth Circuit court reversed a federal district court ruling which found a Mary-

land tax intercept program unconstitutional. The district court had found that the tax intercept statute violated the due process clause of the Fourteenth Amendment in that it failed to provide the plaintiffs with a preintercept hearing, and failed to advise the party whose tax refund had been intercepted of possible defenses. Under the state program, the state sent a preintercept notice to affected taxpayers after receiving notice from the child support enforcement administration that an individual was delinquent in his child support obligations. The notice advised the individuals of the right to request an "investigation" and the method of doing so. After the tax refund was intercepted, the state, within 15 days, informed the individual of his right to appeal the interception. Once the obligor appealed, he or she was provided an administrative hearing before an impartial review officer.

The Fourth Circuit held that these procedures offered sufficient protection to individuals obligated to the state for unpaid child support. The court emphasized that the Maryland procedure provided obligated individuals with as much of a predeprivation "hearing" as was given the recipients in *Mathews* v. *Eldridge, supra,* 424 U.S. 319. The court held that a predeprivation formal hearing was particularly unnecessary if there was some informal procedure, such as an opportunity to complain, available before deprivation, though an actual hearing was delayed until after deprivation. (*McClelland* v. *Massinga, supra,* 786 F.2d 1205 at p. 1213.)

In *Duranceau* v. *Wallace* (9th Cir. 1984) 743 F.2d 709, the Ninth Circuit Court of Appeals held that Washington State's scheme for the offset of child support debts against property owing the debtor did not violate the due process clause of the Fourteenth Amendment. Though not involving a tax refund intercept program, *Duranceau* is instructive here. In *Duranceau,* the child support debtor had won a judgment against the City of Tacoma. However, the state agency authorized to enforce child support obligations ordered the amount of the child support judgment offset against the debtor's judgment. The debtor requested a " 'fair hearing' " after receiving notice of the offset. Under the offset statute he was not entitled to a formal administrative hearing. The state agency had a policy of encouraging debtors to discuss any disagreements with its representative and then, if a dispute remained, offered an informal hearing as a kind of nonbinding arbitration. These informal methods were not required by statute. The debtor's other recourse was to seek judicial review.

The debtor argued that due process required a prompt postgarnishment formal administrative hearing. (He apparently did not contend that any pregarnishment hearing was necessary.) The court rejected this argument. The court reviewed the relevant factors set forth in *Mathews, supra,* 424 U.S. 319. As to the factor of the risk of erroneous deprivation, the court

stated: "[T]he risk of erroneous deprivation is less here than in cases where the deprivation depends on complex factual determinations (cases such as, for example, those concerning the termination of social security benefits). Here the sources of error are few: computational mistakes, clerical errors, or failures to take account of statutory defenses like the earnings exemption asserted by [the debtor]." (*Duranceau* v. *Wallace, supra,* 743 F.2d at p. 712.)

As to the factor of alternative safeguards, the court stated: "The procedures under challenge give the child support debtor two avenues of relief—informal administrative procedures . . . and judicial relief in superior court, . . . [¶] We are not convinced that the alternative proposed by [the debtor] would reduce the risk of erroneous deprivation or otherwise serve the purposes of due process. One possible advantage of a formal administrative hearing over the informal processes presently available is that formal hearings, because they are accompanied by a record and explicit findings, are more easily reviewable on appeal. However, since the child support debtor can obtain judicial relief directly, this advantage is insignificant. One might also argue that a more formal administrative proceeding would be fairer and more objective than the informal proceedings offered by the Department. But this would be pure speculation." (*Duranceau* v. *Wallace, supra,* at p. 712.) The court concluded that Washington's child support garnishment statute met the requirements of due process.

Appellants rely principally upon *Nelson* v. *Regan* (D.Conn. 1983) 560 F.Supp. 1101, affirmed on other grounds, 731 F.2d 105 (2d Cir. 1984). There the district court ruled that the following procedures were required to safeguard taxpayers' due process rights under the federal tax intercept program: (1) the defendants state and Internal Revenue Service must provide notice to taxpayers whose refunds might be intercepted, specifying possible defenses and the availability of regular procedures to challenge the offset; (2) defendants must provide a predeprivation administrative review, though not a formal hearing, before an individual with authority to remove the taxpayer from the list of names to incur an offset; (3) the review must allow the taxpayer to appear personally and to present documentary evidence; and (4) the administrative decision must be judicially reviewable. (*Id.,* at p. 1111.)

## V

### *Discussion*

As acknowledged by appellants, the due process guaranty contained in article I, section 7, subdivision (a) of the California Constitution has been held to be identical in purpose and scope to the Fourteenth Amendment to the United States Constitution. (See *Gray* v. *Whitmore* (1971) 17

Cal.App.3d 1, 20 [94 Cal.Rptr. 904].) Appellants as well as respondents therefore limit their analysis of due process requirements for a tax refund intercept program to those established by federal decisions. The parties do not dispute that if the intercept program satisfies due process requirements under the United States Constitution, the program satisfies similar requirements under the California Constitution.

We analyze separately the due process safeguards provided for the offset of child support debts from those provided for the offset of nonchild support debts.

■ As to the offset of the former, California statutory law, as implemented by the DSS instructions set forth above, amply provides the taxpayer with adequate notice and an opportunity to be heard at every critical stage. Prior to offset, the taxpayer is provided with notice of the intent to refer his or her name to the FTB, the nature and amount of the debt, possible defenses, and the agency to contact to contest the offset. Under the DSS regulations, the taxpayer is provided the opportunity to object to the offset, have the alleged debt investigated, and have an administrative review of the decision to offset both prior to and after the offset. Such procedures provide even greater safeguards to the taxpayer's due process rights than were provided by the preoffset procedures approved in *McClelland* v. *Massinga, supra,* 786 F.2d 1205, *Knisley* v. *Bowman, supra,* 656 F.Supp. 1540, and *Jahn* v. *Regan, supra,* 584 F.Supp. 399.

■ Appellants' objection to the offset program as implemented by the DSS is that the DSS instructions are not contained in a statute or other legislative act and therefore, appellants argue, do not have the force of law. This objection has no merit. Such administrative instructions promulgated by the DSS constitute a quasi-legislative act which governs the application of section 12419.5 in the case of child support obligors, and have the force of law. (See *Geftakys* v. *State Personnel Board* (1982) 138 Cal.App.3d 844, 867 [188 Cal.Rptr. 305]; see also *Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 390 [211 Cal.Rptr. 758, 696 P.2d 150].)

■ We therefore conclude that the trial court properly found that the intercept program under section 12419.5 as applied to child support obligation debts does not violate California taxpayers' procedural due process rights under either the state or federal Constitutions.

The implementation of the intercept program for nonchild support debts is not governed by regulations as specific or comprehensive as those for child support debts, and therefore requires more extensive analysis. As set forth above, the offset of nonchild support debts is governed by the SAM and the FTB Requirements. ■ Appellants contend that the provisions

for notice and hearing contained in these administrative manuals should be disregarded because they do not have the force of a statute or regulation. Again, such contention has no merit. The SAM and FTB Requirements constitute "quasi-legislative" acts which establish rules governing the matter covered. (See *Geftakys* v. *State Personnel Board, supra,* 138 Cal.App.3d at p. 867; *Association for Retarded Citizens* v. *Department of Developmental Services, supra,* 38 Cal.3d at p. 390.)

As to preoffset notice, the SAM provides generally that the taxpayer will be given notice and an opportunity to object. The FTB Requirements' sample preoffset letter, discussed *ante,* sets forth the specific procedure to be followed by the taxpayer to contest an offset: he or she may submit objections either personally or in writing to the creditor agency requesting the offset, after which a review will be undertaken of the taxpayer's case.

Appellants argue that the FTB Requirements do not *require* that the specific sample letter provided be sent to taxpayers, or that the review procedure described in the letter be followed. This point is well taken. Although the FTB Requirements require that the taxpayer be provided notice consistent with SAM, section 8790.3, they do not specifically require that the sample preoffset letter be sent or that a review be undertaken of any objections. Such review procedure, and notice thereof, indicated in the sample letter would adequately satisfy a taxpayer's due process rights.

We conclude that the SAM and FTB Requirements provisions, if modified to *require* notice identical or substantially similar to that of the sample letter, and the opportunity for informal review described therein, adequately safeguard the taxpayer's predeprivation due process rights. The taxpayer is provided the opportunity to present either personally or in writing any objections he or she may have to the offset and an informal review of these objections. That the notice does not inform the taxpayer of possible defenses to the offset does not render it constitutionally infirm. The courts in *Duranceau* v. *Wallace, supra,* 743 F.2d 709, and *McClelland* v. *Massinga, supra,* 786 F.Supp. 1205, did not find that notice of possible defenses was constitutionally required, nor do we. The notice of the possible defenses available to the nonobligated spouse provided in *Knisley* v. *Bowman, supra,* 656 F.Supp. 1540, is not applicable under California's community property laws.

Appellants' assertion that a predeprivation evidentiary review followed by written findings are constitutionally required is not supported by the federal authorities discussed *ante.* The withholding, possibly only temporarily, of a tax refund constitutes less of a deprivation of a property interest than the termination of disability benefits in *Mathews, supra,* 424 U.S. 319,

where the court held no formal hearing prior to termination was required. California decisions do not indicate otherwise. ■ In California, a tax refund is a simple debt owed by the state to the taxpayer (*Tyler* v. *State of California* (1982) 134 Cal.App.3d 973 [185 Cal.Rptr. 49]), and, although derived from taxes paid on wages earned during the course of the year, is not wages (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 749 [97 Cal.Rptr. 385, 488 P.2d 953]) or regular income upon which the taxpayer relies for his daily necessities.

■ Further, considering the second factor under *Mathews* of the risk of an erroneous deprivation of property interest without a formal hearing and written findings, such risk here is slight. The types of liquidated debts such as student loans which will be the subject of offset are easily calculated according to the terms of repayment to the state agency. (See *Mathews* v. *Eldridge, supra,* 424 U.S. at pp. 343-345 [47 L.Ed.2d at p. 38-39]; *Jahn* v. *Regan, supra,* 584 F.Supp. at pp. 414-415.) The FTB Requirements also provide for postoffset notice which affords the taxpayer the opportunity for another informal review by the interested state agency.

The opportunity for similar preoffset and postoffset informal reviews, without any formal administrative hearing, was held to satisfy the debtor's due process rights in *Duranceau* v. *Wallace, supra,* 743 F.2d 709, and *Knisley* v. *Bowman, supra,* 656 F.Supp. 1540, where the opportunity for direct judicial review was available following offset. We acknowledge that these cases dealt with the offset of a child support obligation reduced to a judgment. ■ Until an attack is made on a final judgment, there is a presumption that the judgment debtor already has been accorded due process in the determination of the debt. (*Del Costello* v. *State of California* (1982) 135 Cal.App.3d 887, 895 [185 Cal.Rptr. 582].) Here, the nonchild support debt—the delinquent student loan of Wightman—has not been reduced to a court order or judgment. ■ A prejudgment debtor is entitled to greater protection by the procedural due process doctrine than is a postjudgment debtor. (*Jahn* v. *Regan, supra,* 584 F.Supp. at p. 413.) Nevertheless, in the case of a student loan, the "amount owing" generally will be easily calculable pursuant to the written loan agreement and evidence of payments, if any, made. ■ The "nature of a due process hearing is shaped by the 'risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions.'" (*Califano* v. *Yamasaki* (1979) 442 U.S. 682, 696 [61 L.Ed.2d 176, 189, 99 S.Ct. 2545] [beneficiaries of Social Security benefits not entitled to an oral hearing on the issue of overpayment of benefits prior the commencement of recoupment because such issue involved "relatively straightforward matters of computation for which written review is ordinarily an adequate means to correct prior mistakes."].)

■ Although the notice and review procedures provided the taxpayer under SAM and the FTB Requirements might not be constitutionally adequate in the cases of some unliquidated debts, we construe the term "amount owing" under section 12419.5 to refer to liquidated or easily calculable debts, such as a delinquent student loan. Such construction is reasonable, since unliquidated claims are not generally available in law as a setoff. (See *Del Costello* v. *State of California, supra,* 135 Cal.App.3d at p. 890, fn. 2; 16 Cal.Jur.3d, Counterclaim and Setoff, § 6, pp. 254-255.)

■ We therefore conclude that due process requires that a taxpayer be provided with notice and the opportunity for review of his or her objection to an offset as indicated in the FTB Requirements' sample letter. If so modified, the SAM and FTB Requirements pertaining to the offset of non-child support debts against state income tax refunds comport with the procedural due process requirements of the California and United States Constitutions.

## VI

### *Disposition*

The judgment, as modified in accordance with this opinion, is affirmed.

Barry-Deal, J. and Merrill, J., concurred.