## CHARLIE JARMON *v.* COMMISSIONER OF SOCIAL SERVICES

| Superior Court | Judicial District of New Britain | File No. CV02-0512901S |

Memorandum filed September 25, 2002

 

*Frederic Gilman*, for the plaintiff.

*Stephen J. McGovern*, assistant attorney general, with whom was *Richard Blumenthal*, attorney general, for the defendant.

## INTRODUCTION

SCHUMAN, J. The primary issue in this administrative appeal is whether procedural due process requires notice and a hearing before the defendant, the commissioner of social services (commissioner), places a withholding order on assets owned by a child support obligor pursuant to General Statutes § 52-362d (d). The court holds that it does not.

### I

The administrative record establishes the following facts. The plaintiff, Charlie Jarmon, is the father of Devon, born in 1987, and Alysia, born in 1988. Their natural mother is Theresa R. Perry. On November 30, 1990, a family support magistrate ordered the plaintiff to pay a total of $135 per week in current child support as well as $10 per week to reduce an arrearage of $3778.50.

Sometime after this order, the children went into foster care. Thereafter, they lived with their grandmother, Macie Jarmon. Effective July 1, 1992, the department of social services (department) granted Aid

to Families with Dependent Children (AFDC) assistance to Macie Jarmon for the benefit of the children. The plaintiff's child support payments became payable to the state while Macie Jarmon received AFDC benefits for the children. AFDC benefits terminated on August 31, 1996, as the Superior Court for Juvenile Matters ordered that the plaintiff and Macie Jarmon become joint custodians of the children. On November 25, 1996, the Superior Court approved a stipulation of the plaintiff and Perry terminating the plaintiff's child support obligations. The state was not a party to this agreement.

On March 22, 2001, the department's bureau of child support enforcement sent a notice to the Chelsea Groton Savings Bank informing the bank that it should withhold delivery or distribution of the plaintiff's assets up to the amount of $26,429.08 pursuant to General Statutes § 52-362d (d).[1] On March 26, 2001, the department sent the plaintiff a "Notice of Withholding of Financial Assets" pursuant to General Statutes § 52-362d (e) and § 52-362d-5 of the Regulations of Connecticut State Agencies informing him of the withholding order, advising him of his right to request a hearing

[1] General Statutes § 52-362d (d) provides: "Whenever an order of the Superior Court or a family support magistrate for support of a minor child or children is issued and such payments have been ordered through the IV-D agency, and the obligor against whom such support order was issued owes overdue support under such order in the amount of five hundred dollars or more, the IV-D agency, as defined in subdivision (12) of subsection (b) of section 46b-231, or the Support Enforcement Division of the Superior Court may notify (1) any state or local agency with authority to distribute benefits to such obligor including, but not limited to, unemployment compensation and workers' compensation, (2) any person having or expecting to have custody or control of or authority to distribute any amounts due such obligor under any judgment or settlement, (3) any financial institution holding assets of such obligor, and (4) any public or private entity administering a public or private retirement fund in which such obligor has an interest that such obligor owes overdue support in a IV-D support case. Upon receipt of such notice, such agency, person, institution or entity shall withhold delivery or distribution of any such benefits, amounts, assets or funds until receipt of further notice from the IV-D agency."

within sixty days, and notifying him of the defenses he may raise at a hearing.[2] On March 30, 2001, the plaintiff requested an administrative hearing.

After an administrative hearing on July 16, 2001, the hearing officer issued a decision denying relief. The hearing officer found, based on the department's audit of April 27, 2001, that the plaintiff had not paid the $135 child support for the 218 weeks between July 1, 1992, and August 31, 1996, for a gross delinquency of $29,430. The department had recovered $3332.52 from tax offsets and wage garnishments. The net overdue amount was $26,097.48. Since this amount obviously exceeded the $500 minimum required by § 52-362d (d) for a withholding order, and there was no evidence that the department had identified the wrong person or that there was any other defense to the department's

---

[2] General Statutes § 52-362d (e) provides: "In IV-D cases in which a notice is sent pursuant to subsection (d) of this section, the IV-D agency shall notify the obligor that such benefits, amounts, assets or funds have been withheld as a result of overdue support in a IV-D support case in accordance with an order of the Superior Court or family support magistrate. The IV-D agency shall further notify the agency, person, institution or entity to whom notice was sent pursuant to subsection (d) of this section as follows: (1) Upon expiration of the time for requesting a hearing specified in section 17b-60, to make payment to the state from any such benefits, amounts, assets or funds withheld in accordance with subsection (d) of this section to satisfy such overdue support provided, in the case of retirement funds, such payment shall only be made in accordance with a withholding order issued under section 52-362 when the obligor is entitled to receive retirement benefits from such fund; (2) upon payment of such overdue support by such obligor, to release or distribute, as appropriate, such benefits, amounts, assets or funds to such obligor; or (3) upon issuance of a decision by the hearing officer or the court upon appeal of such officer's decision, to take such other action as may be ordered by such officer or such court, and such agency, person, institution or entity shall forthwith comply with such notice received from the IV-D agency."

Section 52-362d-5 of the Regulations of Connecticut State Agencies duplicates the statutory requirement that the department notify the obligor of the withholding order and also requires the department to hold a fair hearing to any obligor who requests one.

enforcement effort, the hearing officer upheld the order to the bank to withhold the plaintiff's assets.[3]

During the pendency of the agency proceedings, the plaintiff filed a motion to vacate the department's withholding order with a family support magistrate. The magistrate granted the order but, on appeal by the state, the Superior Court reversed on the ground that the plaintiff had failed to exhaust his administrative remedies. *Perry* v. *Jarmon*, Superior Court, judicial district of New London at Norwich, Docket No. FA89-092584 (February 1, 2002) (*Dubay, J.*). In the meantime, the department denied the plaintiff's request for reconsideration. The plaintiff now appeals to this court from the final decision of the department.

## II

The Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., governs appeals to the court from the decisions of administrative agencies. Since the issue of the constitutionality of § 52-362d (d) and (e) is a pure question of law, the court's review is plenary. See *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 136–37, 778 A.2d 7 (2001). Indeed, because the plaintiff did not raise the constitutional issue before the hearing officer, the hearing officer did not address it, and there is no ruling on the issue to review.[4]

The commissioner argues that the plaintiff's failure to raise the issue before the hearing officer constitutes a waiver that precludes judicial review. While ordinarily the plaintiff's failure would have this consequence, an exception exists for constitutional claims. See *Burnham* v. *Administrator, Unemployment Compensation Act*, 184 Conn. 317, 322, 439 A.2d 1008 (1981). This

---

[3] The record does not disclose how much is in the account.

[4] The plaintiff made brief mention of the due process claim in his request for reconsideration, which the agency summarily denied.

exception has particular significance here because it is unrealistic to expect an executive agency hearing officer to declare a legislative act unconstitutional. See *Mathews* v. *Eldridge*, 424 U.S. 319, 330, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *LaCroix* v. *Board of Education*, 199 Conn. 70, 79 n.7, 505 A.2d 1233 (1986). Thus, there is no reason to challenge the constitutionality of a statute in agency hearings. Accordingly, the plaintiff has not waived his right to challenge it here.[5]

## III

### A

Section 52-362d (d) and (e) form one component of a comprehensive child support enforcement plan mandated by Title IV-D of the Social Security Act, 42 U.S.C. § 651 et seq. Our Supreme Court has observed that: "Since 1984, the United States Congress has actively encouraged states to take measures to assure that children receive adequate financial support from their parents, thereby reducing governmental expenditures for support of children. The Child Support Enforcement Amendments of 1984, enacted as Public Law 98-378 and codified at 42 U.S.C. § 666 et seq.,

---

[5] A plaintiff may, however, need to raise the issue before the agency in order to create a factual record to support the claim. In this court, the appeal is "confined to the record." General Statutes § 4-183 (i).

Apart from the waiver claim, the department does not argue that this court cannot address the constitutionality of a statute in an administrative appeal. In particular, the department does not claim that a plaintiff must file a declaratory judgment action under General Statutes § 4-175 in order to challenge the constitutionality of a statute. Our appellate courts have never expressly held that a plaintiff in an administrative appeal cannot attack the constitutionality of the statute relied upon by the agency and there is at least some general authority allowing a plaintiff to do so. See General Statutes § 4-183 (j) (1) (the court shall affirm an agency decision unless it is "[i]n violation of constitutional or statutory provisions"); *Oklahoma* v. *Civil Service Commission*, 330 U.S. 127, 139, 67 S. Ct. 544, 91 L. Ed. 2d 794 (1947) ("[n]one [of the cases cited by the government] deny to a court with jurisdiction by statute to review the legality of administrative orders the power to examine the constitutionality of the statute by virtue of which the order was entered").

amended part D of title IV of the Social Security Act to require that states establish procedures to improve the effectiveness of child support enforcement (IV-D) programs." *Turner* v. *Turner*, 219 Conn. 703, 713, 595 A.2d 297 (1991). "The Child Support Enforcement Amendments of 1984 required the states to establish, inter alia, statutory procedures for withholding from income amounts payable as support, for the expedited establishment of paternity, for imposing liens against real and personal property for amounts of overdue support, and for reporting overdue support to credit agencies. Public Law 98-378, § 466 (a)." *Turner* v. *Turner*, supra, 713–14 n.8.

The General Assembly responded in 1985 with Public Acts 1985, No. 85-548, "An Act Implementing the Federal Child Support Enforcement Amendments of 1984." Section 7 of that act provides in pertinent part that the state child support enforcement unit "may place a lien on any property, real or personal, in which [a person subject to court-ordered support] has an interest to enforce payment of such arrearage after first providing such person with notice of intent to place such lien, and an opportunity for a hearing before a hearing officer to contest the amount of such arrearage." Public Acts 1985, No. 85-548, § 7.

In 1997, the General Assembly amended this provision, now codified at § 52-362d (a), and enacted subsections (d) and (e) of § 52-362d. Public Acts, Spec. Sess., June, 1997, No. 97-7. The amendment made automatic, rather than discretionary, the placement of a lien on real or personal property of a person with an arrearage of court-ordered support.[6] Subsection (d) provided for

[6] General Statutes § 52-362d (a) now provides: "Whenever an order of the Superior Court or a family support magistrate for support of a minor child or children is issued and such payments have been ordered to be made to the state acting by and through the IV-D agency and the person against whom such support order was issued owes past-due support in the amount of five hundred dollars or more, the state shall have a lien on any property, real or personal, in which such person has an interest to enforce payment

the state IV-D agency or the support enforcement division of the Superior Court to notify any agency, financial institution, or other entity or person holding a benefit or asset of a child support obligor who owes overdue support to "withhold delivery or distribution of any such benefits, amounts, assets or funds until receipt of further notice from the IV-D agency." Spec. Sess. P.A. 97-7, § 29.[7] Subsection (e) provided that, in such cases, the IV-D agency shall notify the obligor of the withholding order and that the entity holding the obligor's assets shall comply with the decision of a hearing officer or a court regarding the order or, upon the expiration of the time for requesting a hearing, shall make payment to the state of the assets being withheld. See footnotes 1 and 2 of this opinion; see also Public Acts 2001, No. 01-91, § 23; Public Acts 2001, No. 01-207, § 10.[8]

## B

The plaintiff argues that the statutory scheme violates procedural due process because subsection (e) and the associated regulations provide for notice and opportunity for a hearing after the state orders an obligor's

---

of such past-due support after first providing such person with notice of intent to place such lien, and an opportunity for a hearing before a hearing officer to contest the amount of such past-due support. The lien for past-due child support shall be secured by the IV-D agency pursuant to procedures contained in the general statutes applicable to the type of property to be secured. Any such lien on real property may, at any time during which the obligor owes the amount of past-due child support secured by such lien, be foreclosed in an action brought in a court of competent jurisdiction by the Commissioner of Social Services in a title IV-D case or by the person to whom the child support is due. When past-due support is owing both to a family and to the state, the proceeds of the lien shall be applied to the family's past-due support first and, when that is satisfied, to the state's past-due support. A lien for past-due support arising in any other state shall be given full faith and credit by this state provided such other state has complied with its procedural rules relating to recording or serving of liens."

[7] Pursuant to General Statutes § 46b-231 (b) (12), the bureau of child support enforcement within the department is the IV-D agency.

[8] The 2001 Public Acts made technical changes to subsections (d) and (e).

assets withheld, rather than before.[9] The court begins review of this claim "mindful that legislative enactments carry with them a strong presumption of constitutionality . . . . Consequently, a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *Hammond* v. *Commissioner of Correction*, 259 Conn. 855, 876, 792 A.2d 774 (2002).[10]

The seminal case regarding procedural due process claims is *Mathews* v. *Eldridge*, supra, 424 U.S. 319. In *Mathews*, the United States Supreme Court held that an evidentiary hearing is not required prior to termination of social security disability payments. Id., 332–49. Noting that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands," the court also created the analytic framework for resolving other procedural due process claims. (Internal quotation marks omitted.) Id., 334. The analysis involves consideration of the following factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal

[9] The plaintiff does not challenge the adequacy, as opposed to the timing, of the notice that the department sends the individual obligor. The notice in the present case advised the obligor of the action that the department is taking, what the obligor can do to resolve the matter and how to request a hearing. The notice also informed the obligor that the defenses that he may raise at the hearing include, but are not limited to, the claim that he is the wrong person, that there was no order in effect and that the overdue amount is wrong.

[10] Although the plaintiff cites to both the federal and the state constitutions, he offers no separate analysis of his state constitutional claims. The court, therefore, limits its review to the federal constitutional claim. See *State* v. *Reid*, 254 Conn. 540, 553 n.6, 757 A.2d 482 (2000).

and administrative burdens that the additional or substitute procedural requirement would entail." Id., 335; see also *Sassone* v. *Lepore*, 226 Conn. 773, 780–81, 629 A.2d 357 (1993) (applying modified test, based on decision in *Connecticut* v. *Doehr*, 501 U.S. 1, 111 S. Ct. 2105, 115 L. Ed. 2d 1 [1991], when dispute is between private litigants).

The court first examines the private interest involved. Subsection (d) of § 52-362d allows the state to withhold state benefits, including unemployment compensation or workers' compensation, judgments or settlements, assets in financial institutions, and retirement funds. See footnote 1 of this opinion. With the exception of unemployment compensation and possibly workers' compensation, these funds do not generally involve subsistence payments. Here, as in *Mathews*, the need "is likely to be less than that of a welfare recipient." *Mathews* v. *Eldridge*, supra, 424 U.S. 342; cf. *Goldberg* v. *Kelly*, 397 U.S. 254, 264, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970) (termination of welfare pending resolution of controversy over eligibility may deprive eligible recipient of "the very means by which to live while he waits"). Further, state law provides for a fairly prompt resolution of the withholding order, thus reducing the burden on the individual affected. See *Mathews* v. *Eldridge*, supra, 342; General Statutes § 17b-60 (right to administrative hearing within thirty days of request); General Statutes § 17b-61 (a) (right to final decision within sixty days of hearing). The funds are essentially frozen pending a decision, but are not transferred to the state during this period.

The risk of erroneous deprivation is not great. The original obligation of the individual to pay child support derives from a final court order, thus reducing the need for further judicial involvement. See *McCahey* v. *L.P. Investors*, 774 F.2d 543, 550 (2d Cir. 1985). The next

component of individual indebtedness under subsection (d) is whether the obligor owes "overdue support" to the IV-D agency, and thus whether there is a "delinquency accruing after the entry of an initial court order establishing a child support obligation." General Statutes § 52-362j (2). As stated, the department in the present case conducted an audit after placing the withholding order. There is no evidence in the record, however, that reveals how the department determines that an individual owes overdue support before placing the withholding order. While the court would have liked to have seen such evidence in order to assess the reliability of the process, it is the plaintiff's burden to establish the unconstitutionality of the statute and, thus, the plaintiff must bear the burden of failing to produce such evidence. See *Hammond* v. *Commissioner of Correction*, supra, 259 Conn. 876.[11]

The process of determining whether an individual's payments are overdue does not seem complex. The sources of error are few: computational mistakes; clerical errors; or failure to take account of the defenses, such as the absence of a valid court order; that the individual can raise at the hearing. See *Duranceau* v. *Wallace*, 743 F.2d 709, 712 (9th Cir. 1984). While the process is undoubtedly not error free, "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." *Mathews* v. *Eldridge*, supra, 424 U.S. 344. Given the absence of evidence negating the apparent reliability of the department's initial determination that the obligor owes overdue support, the court cannot say that there is great value in

[11] Other than cite *Mathews* v. *Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), and cursorily apply its tripartite test, the plaintiff supplies no research on or analysis of the constitutional claim. The department's response rests almost entirely on the position, which the court has already rejected, that the plaintiff has waived the right to raise this claim on appeal by failing to present it to the hearing officer. In short, neither party has approached the constitutional issue with the diligence that is due.

holding an administrative hearing before the withholding order takes effect. See *Connecticut* v. *Doehr*, supra, 501 U.S. 14 ("[u]nlike determining the existence of a debt or delinquent payments, the issue [of probable cause to prevail in a civil suit] does not concern ordinarily uncomplicated matters that lend themselves to documentary proof" [internal quotation marks omitted]).

The governmental interest is compelling. Indeed, "[i]t is hard to imagine a more compelling state interest than the support of its children." *Duranceau* v. *Wallace*, supra, 743 F.2d 711. Subsections (d) and (e) of § 52-362d further this state interest by eliminating an incentive for parents to acquire assets or financial benefits in lieu of complying with court orders requiring them to support their children. The statute helps achieve the related goal of ensuring that the taxpayers do not pay for the welfare of children when a parent is able to do so.

The burdens that the proposed additional or substitute procedural requirements would entail are significant. Prior notice of the state's decision to order assets withheld might render those assets unavailable. It is well recognized that money and other financial assets "will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given." *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U.S. 663, 679, 94 S. Ct. 2080, 40 L. Ed. 2d 452 (1974); cf. *United States* v. *Property at 4492 South Livonia Road, Livonia*, 889 F.2d 1258, 1265 (2d Cir. 1989) ("unlike some forms of property, a home cannot be readily moved or dissipated"). Prior notice would thus frustate the compelling state interests involved.[12]

---

[12] The assistant attorney general for the department represented at oral argument that the department has not historically made regular use of subsection (a) of § 52-362d to place liens on personal property because the provision for prior notice renders the process ineffective.

Thus, analysis under the tripartite *Mathews* test does not establish a strong justification for predeprivation notice and hearing or otherwise prove that the statue is unconstitutional beyond a reasonable doubt. The court concludes that the existing notice and hearing procedures in subsections (d) and (e) of § 52-362d do not violate the due process clause. See *Duranceau* v. *Wallace*, supra, 743 F.2d 711–13 (Washington's child support garnishment statute, which did not provide for postgarnishment administrative hearing, meets due process); see also *McCahey* v. *L.P. Investors*, supra, 774 F.2d 549–55 (New York postdeprivation procedures for enforcement of judgment meets due process).

### IV

The plaintiff identifies the second issue on appeal as whether the department's decision violated General Statutes § "46b-362d (j)." The General Statutes do not contain a § 46b-362d (j) or even a § 52-362d (j). The plaintiff may have meant to cite General Statutes § 52-362j (2) which, as discussed previously, defines "overdue support" to mean a "delinquency accruing after the entry of an initial court order establishing a child support obligation." Even assuming this point, the plaintiff's rambling discussion provides no analysis of how the department's decision supposedly violated this statute. Under these circumstances, the court finds that the plaintiff has abandoned this claim. See *Merchant* v. *State Ethics Commission*, 53 Conn. App. 808, 818, 733 A.2d 287 (1999). In any event, the department's calculation of the plaintiff's debt to the state encompassed only the amount of current child support that the plaintiff had failed to pay after the entry of the court order in November, 1990, which is exactly what the statutory definition contemplates. The court concludes

that the plaintiff has failed to prove that the department's decision was "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." General Statutes § 4-183 (j) (6).

V

The plaintiff having failed to sustain the grounds for his appeal, the appeal is dismissed.